**Billy B. GOLDBERG, Appellant,**

v.

**UNITED STATES SHOE CORP. and Retail Development, Inc., Appellees.**

No. 01–88–00779–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 20, 1989.

Rehearing Denied Aug. 31, 1989.

Joseph A. Kornfield and Carmellia C. Boyer, Hiller, Kornfield, Axelrad & Falk, Houston, for appellant.

Linda L. Addison, Roger Townsend and W. Wendell Hall, Fulbright & Jaworski, Houston, for appellees.

Before DUNN, WARREN and HUGHES, JJ.

DUNN, Justice.

This is an appeal from a summary judgment rendered in favor of United States Shoe Corporation ("U.S. Shoe") and its operating division, Retail Development, Inc. ("RDI").

The appellant, Billy B. Goldberg ("Goldberg"), sued Western Development Corp. ("WDC"), Herbert Miller, Richard Kramer, Gerald Dillon, U.S. Shoe, and U.S. Shoe's operating division, RDI, alleging fraud and breach of fiduciary duty. After rendition of the summary judgment in favor of the appellees U.S. Shoe and RDI, the cause of action against the appellees was severed by the court.

In points of error one and two, appellant urges that the court erred in granting summary judgment because fact issues exist in connection with his causes of action for fraud and breach of fiduciary duty.

 A summary judgment for the defendant, disposing of the entire case, is proper only if, as a matter of law, plaintiff could not succeed upon any theories pled. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). A defendant who moves for summary judgment has the burden of showing, as a matter of law, that no material issue of fact exists as to the plaintiff's cause of action. *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex.1983). This may be accomplished by showing that at least one element of the plaintiff's cause of action has been established conclusively against the plaintiff. *Gray v. Bertrand*, 723 S.W.2d 957 (Tex.1987). Once the defendant has negated, as a matter of law, such elements of plaintiff's cause of action, the plaintiff has the burden of introducing evidence that raises an issue of fact with respect to the elements negated by the defendant's summary judgment evidence. *Federated Dep't Stores, Inc. v. Houston Lighting & Power Co.*, 646 S.W.2d 509, 511 (Tex.App.—Houston [1st Dist.] 1982, no writ).

On review of a motion for summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. Every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

The parties agree about the following facts:

(1) In 1981, WDC, through Miller, Kramer, and Dillon, approached Goldberg, owner of 26 acres of land in north Houston, with a proposal to build a shopping center on the property. WDC had developed several shopping centers in the Washington, D.C. area and sought to expand its operations into Houston. WDC represented that it had a successful record developing "off price" shopping centers, using a T.H. Mandy clothing store as an "anchor" store for the development. T.H. Mandy is another operating division of U.S. Shoe.

(2) The negotiations resulted in the formation of the Willow Chase Fashion Center Assoc., Ltd., with Miller, Kramer, and Dillon as general partners and Goldberg, RDI, Miller, Kramer, Dillon, and WDC II as limited partners. (WDC II was not joined in the suit.) The plan called for the general partners to build and manage the development. RDI would receive a 6.67% interest in the partnership in return for a $2,500 contribution. Additionally, RDI would deliver to the partnership a five-year lease, for retail space in the shopping center, for the T.H. Mandy store.

(3) The project opened, and T.H. Mandy began operating in the shopping center in August 1984. On September 13, 1984, the partnership executed a $13,000,000 promissory note to The Travelers Insurance Co. ("Travelers") and, as part of the note, executed an assignment of leases, giving the insurance company the right to collect un-

paid rents should the partnership default on its payments under the note. The partnership failed to make payments on the note in August, September, and October 1985. On October 4, 1985, Travelers cashed a $1,950,000 letter of credit, purchased by the partnership to secure that rents on the project would reach a specific annual income by a certain date. The insurance company applied the money from the letter of credit to the August, September, and October payments due, and the remainder to the balance on the loan.

(4) The T.H. Mandy store announced, on December 4, 1985, that it would close on December 24, 1985. On February 19, 1986, Travelers exercised its assignment of leases and informed U.S. Shoe that "all rentals and other monies owing or to become owing" should be paid directly to Travelers. Travelers foreclosed on the development on March 4, 1986.

Goldberg's claim of fraud rests on his assertion that, at the time the partnership was created, there was a "secret agreement" between U.S. Shoe, RDI, and the general partners, that U.S. Shoe would not be liable, or held accountable for material breaches of its T.H. Mandy lease at the Willow Chase Fashion Center.

Appellees attached the following to their motions for summary judgment: (1) the Willow Chase Fashion Associates, Ltd. partnership agreement; (2) affidavits of Herbert Miller, president of WDC and a general partner of Willow Chase partnership, and Marty Sherman, senior vice-president of U.S. Shoe; and (3) the lease for the T.H. Mandy store at the Willow Chase Fashion Center, signed by Sherman in his capacity as U.S. Shoe vice-president. In his affidavit, Miller testified that there was no agreement or understanding that U.S. Shoe could vacate the T.H. Mandy space at the Center without default penalties. Miller further stated that negotiations began in December 1981 between Goldberg and WDC, and in early 1982, WDC asked U.S. Shoe, through RDI, to enter into the proposed partnership to develop the Center. Miller attested that when U.S. Shoe closed the T.H. Mandy store on December 24,

1985, WDC informed U.S. Shoe it was in default and requested the situation be cured. He further stated the general partners did not pursue remedies against U.S. Shoe because any recovery would inure to the benefit of Travelers.

Sherman's affidavit stated that neither U.S. Shoe nor its operating divisions had any contact or negotiations with Goldberg prior to the execution of the partnership agreement. Sherman testified that there was no agreement among U.S. Shoe, RDI, and WDC that default remedies would not be pursued upon breach of the T.H. Mandy lease by U.S. Shoe. Sherman stated that no representations were made to Goldberg that the T.H. Mandy store would operate continuously at the Center. Sherman stated U.S. Shoe made payment to Travelers in March in the full amount of the cost of extras at the Center.

Goldberg, in his response to the motion for summary judgment, argued that WDC failed to pursue any remedies for U.S. Shoe's breach of the T.H. Mandy lease. Goldberg attached to his response two Western Management Corporation (WDC's local management company) interoffice memoranda, dated November 26, 1985, from David M. Weinstein to Carol Garnes, regarding the T.H. Mandy lease, which are reproduced below:

> Please be advised that the above referenced tenant intends to close its doors on December 24, 1985. As of this date I have not received any correspondence pertaining to this matter.
>
> There are no provisions in the tenant's lease sanctioning this action.

The second memorandum stated:

> Per my conversation with Lenny Max regarding the closing of T.H. Mandy at the above-referenced center, Mr. Max said that WDC was aware of the situation and was handling it. In addition, if I had any questions regarding T.H. Mandy, I should take it up with WDC and that WMC was not to interfere in the hanging of any banners or going out of business signs T.H. Mandy wanted to put up at the center. I informed Mr. Max that in order to hang going out of busi-

ness signs and banners, he would have to send a written request asking for permission. Mr. Max hung up on me.

In addition to the above memos, Goldberg attached an internal U.S. Shoe memorandum, dated February 24, 1986, from Jim Vadis to Marty Sherman, that discussed Travelers' exercise of the assignment of lease agreement. This memo is as follows:

> Just received a phone call from Dick Murray. He stated that he was just instructed by Bob Jung to send all future rent checks for Willowchase to an insurance company who has foreclosed on the general partnership of Willowchase.
>
> Our understanding with Miller was that we could leave Willowchase without any penalty. I'm assuming the problem is that we never received the formal release and now may be liable to the insurance company for future rents.

The elements of actual fraud are as follows: (1) a material representation was made; (2) it was false; (3) when the speaker made it he knew it was false, or made it recklessly without any knowledge of the truth, and as a positive assertion; (4) he made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; (6) and he thereby suffered injury. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977).

 The memo dated February 1986, quoted above, does not specifically address at what point in time the alleged "understanding" between U.S. Shoe, RDI, WDC, and the general partners occurred. It could have occurred at the time Goldberg entered into the partnership agreement, or it could have occurred after T.H. Mandy failed to make timely payments on its lease obligation. There is a question of fact as to whether or not there was an understanding, the point in time the alleged understanding occurred, and what the alleged understanding concerned.

Goldberg asserts that the T.H. Mandy lease was of "prime importance to the Partnership" and that the store's continued operation was central to the purpose of the partnership. He stated the lease induced him to become a limited partner and that, although it appeared T.H. Mandy entered into a binding lease with forfeiture provisions and damages, there existed a secret "understanding" that T.H. Mandy could breach the lease without any obligations or penalty on the part of T.H. Mandy, U.S. Shoe, or RDI.

To be entitled to summary judgment, U.S. Shoe and RDI were required to establish the absence of any genuine issue of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). This they failed to do. We therefore reverse the judgment and remand the cause. In view of our disposition of this point of error, we need not discuss Goldberg's further contentions regarding breach of fiduciary duty owed him as a limited partner, or the court's ruling on his motion for new trial.

The judgment of the trial court is reversed, and the cause is remanded.