The **RESOLUTION TRUST CORPORATION** as Receiver for American Savings and Loan Association of Brazoria County, Appellant,

v.

**Geri AMMONS, Appellee.**

**No. 01–91–00460–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 9, 1992.

Rehearing Denied Aug. 26, 1992.

Colleen B. Bombardier, Robert D. McGillicuddy, Maria Beatrice Valdez, Sheila Kraft Budoff, Washington, D.C., for appellant.

John B. Holmes, Jr., Karen A. Clark, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and PRICE,* JJ.

* Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

## OPINION

OLIVER–PARROTT, Chief Justice.

This Court is asked to determine whether the trial court properly granted a summary judgment in a suit on a promissory note in favor of appellee, Geri Ammons. We find that it did not, and reverse the judgment of the trial court and remand the cause.

### Background

On March 8, 1988, appellee, Geri Ammons, executed a promissory note in the amount of $17,526.32 payable to American Savings and Loan Association of Brazoria County, Texas (American). The note was executed as a renewal of a previous obligation between American and Ammons. The note provided that interest would be calculated "daily on a simple interest basis, at the rate of ten percent per annum" and that the "[m]atured unpaid principal and interest [would] bear interest at the rate of eighteen percent per annum." The note also included the following provision:

> No provisions of this instrument or any other instrument executed in connection herewith shall require the payment or permit the collection of interest in excess of the maximum rate permitted by law.... it is the intention of the parties to conform strictly to the usury laws....

Ammons defaulted in payment of the note, which matured by its own terms on October 15, 1988.

On February 28, 1989, American filed suit on the promissory note to recover the balance owing of $17,526.32 as well as pre- and postjudgment interest at the legal rate. Ammons responded to the suit by filing a general denial.

On April 14, 1989, American filed its first motion for summary judgment. Ammons did not respond to this motion and the trial court, after conducting a hearing, granted the motion, on May 8, 1989. The trial court entered judgment for American for $17,259.42, together with attorney's fees, and

"interest on the entire judgment at the rate of eighteen per centum per annum from the date of judgment until paid."

On June 5, 1989, Ammons filed the first of two motions for new trial, amended her original answer, and responded to American's motion for summary judgment. In her first motion for new trial, Ammons asserted that she was not served a copy of American's motion for summary judgment, nor with notice of the date set for the hearing on the motion. Ammons amended her original answer to include a usury defense based on assertions that the promissory note permitted the collection of a late charge in violation of the Texas Consumer Credit Code. In her response to American's motion for summary judgment, Ammons asserted that there were issues of material fact because American represented to her that the loan would be renewed at maturity under the same terms and conditions. The trial court granted Ammons' first motion for new trial on July 9, 1989.

On April 11, 1990, American filed a second motion for summary judgment.[1] Ammons did not respond to the motion and the trial court for a second time granted American's motion for summary judgment on May 14, 1990. The trial court entered judgment for American in the amount of $24,050.07, "together with attorney's fees, plus interest on the entire judgment at the rate of eighteen per centum from the date of judgment." Ammons then filed a second motion for new trial asserting she was entitled to a cancellation of her obligations under the note, because American's motion for summary judgment was supported by an affidavit that calculated a balance of $23,777.16 due on the note based on a usurious rate of interest.[2] American responded to Ammons' second motion for new trial asserting that: (1) Ammons' usury claim was unsubstantiated; (2) the interest charged in its second motion for summary

---

1. American's motion requested that the trial court take judicial notice of Tex.Rev.Civ.Stat.Ann. art. 852a, § 5.03 (Vernon Supp.1992), which provides that a savings and loan association may charge penalties for prepayments or late payments.

2. The affidavit attached to American's motion reflected the note's payment history and explained that all late charges were backed out and not charged to the defendant and that the $23,777.16 represented the balance of the note after applying all offsets and credits.

judgment was properly calculated; (3) its interest calculations had not been challenged by Ammons prior to judgment; and (4) Ammons' postjudgment contention that American's pleadings constituted a usurious charge was not preserved because the only usury claim made before the granting of summary judgment related to terms of the note that provided for the assessment of late charges. On August 22, 1990, the trial court granted Ammons' second motion for new trial.

On March 9, 1989, American was placed into the conservatorship of the Federal Savings and Loan Corporation (FSLIC). In August of 1989, the Resolution Trust Corporation (the RTC) succeeded the FSLIC as conservator by operation of law. In September of 1990, the Director of the Office of Thrift and Supervision appointed the RTC as receiver for American. The RTC was substituted into the law suit in December of 1990.

On January 11, 1991, Ammons amended her original answer a second time to include a claim that the note was void and unenforceable because the "plaintiff ... demanded from and charged defendant usurious interest on [the] note." Ammons also filed a motion for summary judgment asserting that the relief requested by American in its second motion for summary judgment constituted a usurious interest rate of 36.97 percent.[3] The RTC responded asserting that Ammons' liability under the note is controlled by federal law that precludes a debtor from raising the defense of usury to defeat the RTC's claim on a note acquired from an insured institution. On February 19, 1991, the trial court granted Ammons' motion and ordered that "the [RTC] take nothing from [Ammons] by its suit." The trial court denied the RTC's

subsequent motion for new trial. The RTC now appeals from the trial court's granting of summary judgment for Ammons.

Waiver of federal common law defenses

Before addressing the RTC's first point of error, we will address Ammons' contention that the RTC has waived its right to assert federal common law defenses and the *D'Oench Duhme*[4] doctrine because such defenses were not plead in response to her motion for summary judgment. Ammons concedes that the RTC raised these defenses in a memorandum of law in support of its response to her motion for summary judgment. Ammons, however, contends that the memorandum of law is not an "answer or other response" to a motion for summary judgment required by Tex. R.Civ.P. 166a(c).

■ Rule 166a(c) provides that issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. The written answer or response to the motion must fairly apprise the movant and the court of issues the nonmovant contends should defeat the motion. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

■ The RTC filed a response to Ammons' motion for summary judgment and incorporated a memorandum of law in support of its response that was served on all parties and the trial court contemporaneously with its response. It is undisputed that the RTC's motion in response and memorandum of law in support of the response were in "writing" and "before" the trial court at the summary judgment hearing. Moreover, the motion itself, by its

3. Ammons' summary judgment contends the RTC by its pleadings charged her interest twice the amount allowed by law. When American moved a second time for summary judgment on the note, the motion was supported by an affidavit executed by a senior officer who stated that Ammons owed $23,777.16 in principal and accrued interest. This amount represented an increase of $6,517.74 from the amount sought in American's first motion for summary judgment. Thus, Ammons asserts that the difference represents an increase in interest that results in an

effective annual interest rate of 37.97 percent. Ammons supported her motion for summary judgment by an affidavit executed by a banking expert reflecting the calculation of the 37.97 percent and copies of the consumer credit code reflecting that the maximum rate chargeable to her was 18 percent.

4. *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 456, 62 S.Ct. 676, 679, 86 L.Ed. 956 (1942).

language, expressly incorporated the memorandum of law. We find the RTC's motion in response and supporting memorandum of law constitutes the type of "written motion, answer or other response" contemplated by rule 166a(c). *See S. McConnell v. Southside Indep. School Dist.*, 814 S.W.2d 247, 248 (Tex.App.—Austin 1991, writ granted) (Rule 166a allows a summary judgment movant to set out the specific grounds for summary judgment in a brief served on all parties contemporaneously with the motion itself); *see also* TEX. R.CIV.P. 1 (rules are to be given liberal construction).

We now address the RTC's first point of error.

### Ammons' summary judgment

In its first point of error, the RTC argues the trial court erred in granting Ammons' summary judgment as a matter of law because: (1) the *D'Oench Duhme* doctrine precludes Ammons from asserting her usury claims against a federal receiver; (2) federal common law precludes usury claims and defenses against a federal receiver; and (3) the federal holder in due course doctrine bars the makers of promissory notes from asserting various "personal" defenses, such as usury.

### Standard of review

Summary judgment is proper for a defendant if its summary judgment proof establishes, as a matter of law, that there exists no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Gray v. Bertrand*, 723 S.W.2d 957, 958 (Tex.1987); *Goldberg v. United States Shoe Corp.*, 775 S.W.2d 751, 752 (Tex. App.—Houston [1st Dist.] 1989, writ denied). A summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, the plaintiff could not succeed upon any theories pleaded. *Delgado v. Burns*, 656 S.W.2d 428, 428 (Tex.1983); *Havens v. Tomball Communi-*

*ty Hospital*, 793 S.W.2d 690, 691 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

In reviewing the granting of a motion for summary judgment, this Court will take all evidence favorable to the nonmovant as true. *MMP, Ltd v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); *Goldberg*, 775 S.W.2d at 752. Every reasonable inference will be indulged in favor of the nonmovant, and any reasonable doubt will be resolved in its favor. *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex. 1988); *Goldberg*, 775 S.W.2d at 752.

### Federal holder in due course status

In response to the RTC's first point of error, Ammons argues that Texas law permits a borrower to assert usury as an affirmative defense even against a holder in due course. Ammons, however, relies on case law involving private litigants, and notes that, on their face, are usurious.

When acting as a receiver, the RTC is a federal agency like the Federal Deposit Insurance Corporation (FDIC). 12 U.S.C.A. § 1441(b)(1)(B) (West Supp.1990); *Beach v. RTC*, 821 S.W.2d 241, 244 (Tex. App.—Houston [1st Dist.] 1991, no writ). As a matter of federal common law, the federal holder in due course doctrine bars the maker of a promissory note from asserting personal defenses against federal agencies like the FDIC and the FSLIC. This protection has been extended in connection with purchase and assumption transactions between these agencies and insolvent financial institutions.[5] *Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1249 (5th Cir.1990); *FSLIC v. Murray*, 853 F.2d 1251, 1256 (5th Cir.1988). It has been held that these agencies are entitled to the protection of holder in due course status whether acting in their corporate or receivership capacity. *Campbell*, 901 F.2d at 1249; *FDIC v. Wood*, 758 F.2d 156, 160 (6th Cir.1985), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). The

---

5. "Personal" defenses, such as failure of consideration and usury, are not truly defenses against the note itself, but rather are defenses or claims stemming from the underlying transaction. These defenses are allowed when the original

wrongdoer tries to collect the note. A holder in due course, however, takes free of all personal defenses. *FDIC v. Wood*, 758 F.2d 156, 160 (6th Cir.1985), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985).

RTC has also been extended the protection of the federal holder in due course doctrine. *RTC v. G. Marshall*, 939 F.2d 274, 278 (5th Cir.1991). As a holder in due course, the RTC would be immune from the personal affirmative defense of usury. *See FSLIC v. Cribbs*, 918 F.2d 557, 559–60 (5th Cir.1990) (federal holder in due course protection renders a defendant's affirmative defense of usury patently ineffectual); *FDIC v. Leach*, 772 F.2d 1262, 1266–67 (6th Cir.1985) (federal common law bars usury defense).

Ammons concedes that Texas case law has joined the federal common law in conferring holder in due course status upon receivers of financial institutions, even when such receivers have not and cannot meet the requirements of state law to be a holder in due course. *See NCNB Texas Nat'l Bank v. Campise*, 788 S.W.2d 115, 118 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Smith v. FDIC*, 800 S.W.2d 648, 651 (Tex.App.—Houston [14th Dist.] 1990, error dismissed); *FSLIC v. T.F. Stone–Liberty Land Assoc.*, 787 S.W.2d 475, 492 (Tex.App.—Dallas 1990, writ granted). Despite this concession, Ammons argues that the RTC did not raise a fact issue with respect to its status as a holder in due course.

■ The protection of holder in due course status extends to federal receivers and to subsequent holders of a note whether or not they satisfy the technical requirements of state law. *See Campbell*, 901 F.2d at 1248; *Murray*, 853 F.2d at 1256. In order for the federal holder in due course doctrine to apply, the RTC must, however, take the note in good faith and without actual knowledge of defenses. *Wood*, 758 F.2d at 161. There is a presumption the RTC acquires a note without knowledge of any defenses against it. *Wood*, 758 F.2d at 162.

■ When Ammons moved for summary judgment on her affirmative defense of usury, she was required to conclusively prove all the essential elements of her defense as a matter of law, leaving no issues of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

The RTC responded to Ammons' motion and asserted the following:

In the further alternative … [the] RTC contends that it is a federal common law holder in due course of the note at issue and that usury is a personal defense which may not be asserted against the RTC in its capacity as such. (citation omitted.)

Attached to the RTC's response, is an affidavit executed by Carlene Hanna, an agent for the RTC. Hanna's affidavit shows her competency to make the affidavit and sets forth the facts and circumstances leading up to the RTC's appointment as receiver of American and becoming a holder of the note. *See* TEX.R.CIV.P. 166a(f). The response is also supported by supporting documentation reflecting the RTC's appointment and a memorandum of law setting forth the RTC's contentions with supporting legal authority.

Clearly, the RTC's responsive pleading to Ammons' motion for summary judgment raised a fact issue with respect to its counter-affirmative defense of holder in due course status. We therefore hold the trial court erred in granting Ammons' summary judgment. *See Nicholson v. Memorial Hosp. Sys.*, 722 S.W.2d 746, 749 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (plaintiff may defeat defendant's summary judgment by raising a fact issue on each element of its counter-affirmative defense).

We sustain the RTC's first point of error.

■ In its second point of error, the RTC asserts that Ammons failed to establish a valid usury defense as a matter of law. Ammons' entire basis of her usury claim is found in the second motion for summary judgment and supporting affidavits. The supreme court has recently settled some confusion among intermediate appellate courts and has ruled that a charge of interest must be more than a pleading filed with the court. *George A. Fuller Co. v. Carpet Services*, 823 S.W.2d 603 (Tex.1992). Usury statutes are designed to correct abusive practices in consumer and commercial credit transactions,

not to serve as a trap for the unwary pleader in a court proceeding. *Murray v. O & A Express, Inc.*, 630 S.W.2d 633 (Tex. 1982).

Since the summary judgment motion and supporting affidavit were in the nature of pleadings addressed to the court and only demand that the court grant judgment, we hold they do not constitute a charge or usurious interest. *George A. Fuller Co.*, 823 S.W.2d at 603.

We sustain the RTC's second point of error.

We reverse and remand the judgment to the trial court.