**GALVESTON TERMINALS, INC., Appellant,**

v.

**TENNECO OIL COMPANY, Fina Oil and Chemical Co., W.L. Payne, Individually and as Trustee for Tatsumi U.S.A. Corporation, and Tatsumi U.S.A. Corporation, Appellees.**

No. 01–91–00033–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 29, 1995.

Rehearing Overruled Aug. 17, 1995.

Janna L. Ivey, Houston, for appellant.

Before MIRABAL, HUTSON–DUNN and TAFT, JJ.

## OPINION ON MOTION FOR REHEARING

MIRABAL, Justice.

We overrule all the motions for rehearing, withdraw our opinion dated May 18, 1995, and substitute the following opinion in its stead.

Plaintiff, Galveston Terminals, Inc., brought suit to enforce a contractual right of first refusal to purchase real property. This is an appeal from a summary judgment in favor of the defendants. We reverse and remand.

The following facts are uncontroverted:

–On July 17, 1980, an agreement was entered into between Galveston Oil Terminal, Inc.,[1] as seller, and defendant Tenneco Oil Company, as buyer of a 14.91669–acre tract on Pelican Island in Galveston, Texas. This agreement contains the following relevant language:

> In the event that Tenneco Oil Company ... Buyer, elects to sell all or any part of the 14.91669 acre tract ... hereinafter referred to as sold tract, Buyer shall first offer the tract or a part thereof to be sold to GALVESTON OIL TERMINAL, INC., ... SELLER, for purchase of such property upon all of the same terms and conditions as the property is being offered to any third person, firm or corporation....

This agreement was recorded in the Galveston County real property records.

–By a deed dated May 31, 1989, effective August 1, 1989, Defendant Fina Oil and Chemical Company (FINA) acquired title to the 14.91669 acres, without notice to or the knowledge of plaintiff.

–On April 6, 1990, FINA signed an earnest money contract to sell the 14.91669 acres to defendant Payne, Trustee, who later assigned all his rights in the earnest mon-

1. Galveston Oil Terminal, Inc. was a predecessor in interest to Galveston Terminals, Inc., the plaintiff-appellant. These companies will be referred to as "plaintiff" in this opinion.

ey contract to defendant Tatsumi U.S.A. Corporation.[2]

–By letter dated April 10, 1990, FINA informed plaintiff that FINA had received and accepted from Tatsumi an offer to buy the property; this was plaintiff's first notice that FINA owned the property.

Plaintiff filed suit against Tenneco Oil Company, FINA, Tatsumi and W.L. Payne. The cause of action alleged against Tenneco was that Tenneco breached its contract with plaintiff by selling the property to FINA without giving plaintiff notice of the offer to sell. Plaintiff sought specific performance by Tenneco, or alternatively, a judgment against Tenneco for money damages.

Plaintiff's cause of action against FINA is based on the allegation that the transfer of the land from Tenneco to FINA is void, and therefore FINA's attempt to step into Tenneco's shoes, offering plaintiff a right of first refusal to purchase the land instead of Tatsumi, is invalid and void. Plaintiff sought a judgment declaring the transfer of the land to FINA void.

As to defendants Payne and Tatsumi, plaintiff alleged said defendants interfered with plaintiff's contractual rights by inducing FINA to disregard plaintiff's rights regarding the property. Plaintiff sought a judgment against Tatsumi and Payne for actual damages and exemplary damages.

The defendants answered, asserting various affirmative defenses and alleging in relevant part that FINA had not acquired title to the property by "sale," and therefore Tenneco was not obligated to first offer the tract to plaintiff prior to FINA's acquisition of title. Tenneco and FINA also filed counterclaims seeking a declaratory judgment in their favor.

The defendants filed a joint motion for summary judgment setting out the following relevant ground [3]:

Defendants further urge as grounds for summary judgment that there is no material issue of fact and defendants are entitled to judgment as a matter of law, because no "sale" took place which would trigger the preemptive right claimed by plaintiff except for the sale from FINA to Tatsumi, and with respect to that sale FINA complied with the terms of the right of first refusal and any right which plaintiff had to purchase the property by virtue of plaintiff's claimed right was not exercised by plaintiff.

In support of the motion for summary judgment, defendants filed three affidavits and supporting documents that showed:

-In 1988, Tenneco decided to restructure certain of its operations. Tenneco formed new subsidiaries that were to be wholly owned by Tenneco. One of the new subsidiaries was TOC–Gulf Coast, Inc. (the Subsidiary). One hundred percent of the stock of the Subsidiary was owned by Tenneco.

-In the summer of 1988, Tenneco, Inc. (the parent company of defendant Tenneco that owned one hundred percent of the stock of defendant Tenneco) invited bid proposals for the sale of certain of its subsidiary corporations. Among the bidders was FINA.

-Tenneco, Inc. and FINA entered into a stock purchase agreement dated October 7, 1988 for the sale of 100 percent of the stock of the Subsidiary to FINA.

-By deed dated November 3, 1988, Tenneco conveyed to the Subsidiary thousands of acres of real estate located in more than 150 counties in Texas and other states. Included in this conveyance was the 14.91669 acres involved in the present suit.[4]

-On November 8, 1988, FINA paid Tenneco more than $605 million in exchange for a conveyance of 100 percent of the stock of the Subsidiary. As a result, FINA wholly

---

2. Tatsumi and Payne are referred to jointly in this opinion as "Tatsumi."

3. The motion for summary judgment stated many grounds, but the trial court's order specifically grants summary judgment on one identified ground.

4. The November 3, 1988, deed states the conveyance is effective "as of twelve o'clock midnight on June 30, 1988."

owned the Subsidiary, which owned the 14.91669 acres and other property.

-Six and one-half months later, on May 31, 1989, all of the assets of the Subsidiary (except $1000) were distributed to its sole shareholder, FINA, as a liquidating dividend. As a result, FINA held title to the 14.91669 acres and the other real estate that had been owned by the Subsidiary. The Subsidiary was dissolved effective August or September 1989.

-Approximately one year later, in April 1990, FINA entered into a contract with Tatsumi to sell the 14.91669 acres, and offered plaintiff the right of first refusal to purchase the property on the same terms that were offered to Tatsumi.

Based on this evidence, defendants argued as follows in their motion for summary judgment:

(a) Tenneco's transfer of interests in properties to the Subsidiary did not constitute a "sale" as that term was used in the July 17, 1980 Agreement with plaintiff. No "sale" took place, because such a transfer of property as a contribution of capital by one affiliated corporation to a newly-formed corporation for the shares of capital stock of the newly-formed corporation is not a "sale" of realty as that term is used in the agreement.

(b) FINA's purchase of the stock of the Subsidiary was not a "sale" of the property, because the owner of the property remained the same, i.e. the Subsidiary.

(c) Neither was there a "sale" of the property, as that term is used in the July 17, 1980 Agreement, when the Subsidiary was dissolved and its assets were distributed to FINA, its shareholder.

(d) Prior to the time Tatsumi purchased from FINA, FINA complied with the terms of the right of first refusal, and in all respects properly offered the preemptive right to purchase to plaintiff within the time limits and in the form prescribed by the July 17, 1980 Agreement, which offer was refused.

Plaintiff objected to various parts of defendants' summary judgment evidence, and attached certified copies of documents.[5] On the merits, plaintiff argued, in relevant part, that the November 3, 1988, deed of property from Tenneco to the Subsidiary, in exchange for valuable consideration (stock in the new subsidiary), constituted a "sale" subject to plaintiff's right of first refusal.[6]

The trial court granted defendants' motion for summary judgment. The trial court's order stated the grounds on which summary judgment was granted as follows:

> The conveyances from Tenneco to [the Subsidiary] and from [the Subsidiary] to FINA did not constitute sales of the property under the agreement between Tenneco and [plaintiff] executed on July 17, 1980. . . .

> The first offer of sale has occurred and FINA is bound by the offer of first refusal. FINA has complied with the terms thereof in offering the property to [plaintiff]. The Plaintiff did not exercise its option. The option or right of first refusal is therefore extinguished.

Defendants' counterclaims were subsequently severed, and this appeal followed.[7]

In points of error two and three, plaintiff asserts the trial court erred in granting summary judgment because of the existence of material fact issues.

■■■ Under TEX.R.CIV.P. 166a(c) a summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972); *Rogers v. R.J. Reynolds Tobacco Co.*, 761 S.W.2d 788, 793–94 (Tex.App.—Beaumont 1988, writ denied). In a summary judgment proceeding, the burden of proof is on the movant,

---

**5.** As part of its response, plaintiff also filed the affidavit of Rex Bryan, to which defendants objected. The trial court sustained the objections.

**6.** We note that plaintiff also argued, in the trial court and on appeal, that the November 3, 1988, deed did not include the subject 14.91669 acres. We disagree with plaintiff.

**7.** We conclude that the summary judgment is final and appealable.

and all doubts about the existence of a genuine issue of fact are resolved against the movant. *Roskey v. Texas Health Facilities Comm'n,* 639 S.W.2d 302, 303 (Tex.1982); *Rogers,* 761 S.W.2d at 795. Once the movant has established a right to a summary judgment, the burden shifts to the nonmovant. The nonmovant then must respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *United Business Mach. v. Entertainment Mktg., Inc.,* 792 S.W.2d 262, 264 (Tex.App.—Houston [1st Dist.] 1990, no writ).

■ On review of a summary judgment, this Court will take all evidence favorable to the nonmovant as true. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *Goldberg v. United States Shoe Corp.,* 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Every reasonable inference will be indulged in favor of the nonmovant, and any reasonable doubt will be resolved in its favor. *Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499, 501 (Tex.1988); *Goldberg,* 775 S.W.2d at 752. The movant has the burden of showing that there are no genuine issues of material fact, and that it is entitled to judgment as a matter of law. *MMP,* 710 S.W.2d at 60; *Goldberg,* 775 S.W.2d at 752.

■ Summary judgment is proper for a defendant if its summary judgment proof establishes, as a matter of law, that there exists no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action, *Goldberg,* 775 S.W.2d at 752, or if it establishes all elements of an affirmative defense as a matter of law, *Munoz v. Gulf Oil Co.,* 693 S.W.2d 372, 373 (Tex.1984).

■ Where, as here, a trial court's order granting summary judgment specifies the grounds relied on for its ruling, the summary judgment will be affirmed on appeal if the specified grounds are meritorious. *State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *River Consulting, Inc. v. Sullivan,* 848 S.W.2d 165, 168–69 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

■ Plaintiff asserts that defendants failed to establish as a matter of law that the 1988 transfer of the property was not a "sale" of the property within the meaning of the July 1980 agreement. The term "sale," when used in a property context, means a conveyance of an estate for money or money's worth. *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 525 (Tex.1982).

■ The character of a legal transaction depends on the intent and purpose of the parties. *Bray v. McNeely,* 682 S.W.2d 615, 617 (Tex.Civ.App.—Houston [1st Dist.] 1984, no writ); *Security Life Ins. Co. v. Executive Car Leasing Co.,* 433 S.W.2d 915, 916 (Tex.App.—Texarkana 1968, writ ref'd n.r.e.). A contract regarding real property is construed as a whole. *Langley v. Norris,* 141 Tex. 405, 173 S.W.2d 454, 457–58 (1943); *Meisler v. Republic of Texas Sav. Ass'n,* 758 S.W.2d 878, 883–84 (Tex.App.—Houston [14th Dist.] 1988, no writ). The courts will look to each and all of the parts of the written instrument, as well as to surrounding circumstances, to determine the intent and purpose of the parties. *Langley,* 173 S.W.2d at 457–58; *Bray,* 682 S.W.2d at 617. In order to ascertain the intention of the parties, all of the instruments that are shown to be component parts of a single transaction should be read together. *Jones v. Fuller,* 856 S.W.2d 597, 601 (Tex.App.—Waco 1993, writ denied).[8]

■ Defendants argue that, viewed in isolation, none of the three transactions involved here constitutes a "sale." However, the summary judgment evidence viewed as a whole presents a picture of a transaction that, in a round-about way, accomplished just what a direct sale would have: the transfer of title to $605 million worth of real estate from Tenneco to FINA, all within a seven-month time frame. The chronology bears repeating:

---

8. The following additional cases applied the foregoing rules of construction to various types of contracts: *Kinerd v. Colonial Leasing Co.,* 800 S.W.2d 187, 190 (Tex.1990); *Franklin v. Jackson,* 847 S.W.2d 306, 309 (Tex.App.—El Paso 1992, writ denied); *Brokers Leasing Corp. v. Standard Pipeline Coating Co.,* 602 S.W.2d 278, 279–81 (Tex.App.—Dallas 1980, writ ref'd n.r.e.).

-October 7, 1988: FINA contracts with Tenneco, Inc. to purchase all the shares of the Subsidiary for $605 million. As of that time, the Subsidiary apparently has no assets.

-November 3, 1988: defendant Tenneco conveys by deed thousands of acres of real estate to the Subsidiary. The Subsidiary now has substantial assets.

-November 8, 1988: FINA acquired all of the stock of the Subsidiary.

-May 31, 1989: Title to the thousands of acres was transferred from the Subsidiary to FINA.

The "right of first refusal" agreement specifically provided that: "In the event Tenneco ... elects to sell ... the 14.91669 acre tract ... Tenneco shall first offer the tract ... to [plaintiff] for purchase...." Defendants had the burden to prove, as a matter of law, that there was no "election to sell the real estate" by Tenneco. A critical component part of the transaction was the October 7, 1988, contract between Tenneco, Inc. and FINA; that contract is not part of the summary judgment record. The nonmovant plaintiff asserts that an election to sell occurred; there is a question of fact about whether this document shows such an election. Without the October 7, 1988, agreement, there is no way to determine, as a matter of law, whether or not Tenneco had elected to sell the real estate at that point in time. Defendants failed to meet their summary judgment burden.

Accordingly, we sustain plaintiff's points of error two and three.

We reverse the judgment and remand this case to the trial court.