**John T. ENGSTROM, Lyndia Engstrom, Melissa Engstrom, Cynthia Engstrom, Andrea Engstrom, JTE Farms Joint Venture and Coltair Farms, Inc., Appellants,**

v.

**The FIRST NATIONAL BANK OF EAGLE LAKE, Appellee.**

No. 14–96–00648–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 19, 1996.

Rehearing Overruled Jan. 23, 1997.

440

Paul E. Knisely, Joe K. Longley, Timothy R. Labadie, Broadus A. Spivey, Austin, for appellants.

David M. Bond, Ernest J. Blansfield, Stephanie K. Crain, Houston, Ty Prause, Columbus, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

John T. Engstrom, and his wife, Lyndia Engstrom, their children, Melissa Engstrom, Cynthia Engstrom, and Andrea Engstrom, and their two family owned businesses, JTE Farms Joint Venture and Coltair Farms, Inc., appeal from a summary judgment dismissing their claims against appellee (Bank) for wrongful sale of appellants' property in partial satisfaction of defaulted loans. In one point of error, appellants contend the trial court erred in granting the Bank's amended motion for summary judgment. We affirm.

Appellants filed suit against the Bank alleging the wrongful sale of farm equipment financed by the Bank while appellant was on active duty with the United States Navy in the Middle East during the Persian Gulf

War. Appellants alleged violations of the Texas Deceptive Trade Practices Act (DTPA), TEX. BUS & COM.CODE ANN. § 17.41, et seq. (Vernon 1987 & Supp.1996) and the Soldiers' and Sailors' Civil Relief Act of 1940, 50 App. U.S.C.A. § 501, et seq. (1981 & Supp.1992). The case was removed to the United States District Court for the Southern District of Texas, Houston Division, because of the federal claim. In the federal district court, appellants contended that John Engstrom notified the Bank not to sell his equipment at an auction sale but, despite Engstrom's request, the equipment was sold for inadequate consideration at an auction sale on January 26, 1991. Appellants tried to show the Bank conducted or carried out the auction sale as the "Bank's auction." The evidence in the federal district court demonstrated only that the bank aided "people that were really interested in selling some equipment." *John P. Engstrom, et al. v. First National Bank of Eagle Lake,* Civil Action No. H–91–2392, slip op. at 2 (U.S. Dist. Ct. S.D.Tex., Houston Div., August 31, 1993, Harmon, J.)(not designated for publication). The sole violation asserted against the Bank under the Soldiers' and Sailors' Civil Relief Act was the Bank allegedly seized the appellants' equipment and sold it at auction at an unreasonably low price. The federal district judge found that the Bank's summary judgment evidence demonstrated that it was James Clipson, and not the Bank, who placed the equipment in the auction. Appellants argued they never gave Clipson authority to sell the equipment at an auction. The federal district court held, in pertinent part, on the facts:

> Assuming, arguendo, that Clipson was mistaken about his authority to sell the plaintiffs' equipment at an auction the damage sustained could not be imputed to the Bank, but rather to Clipson who is not a party to this proceeding. The Bank did not violate the statute.

*Id.* at 4–5.

The federal district court granted the Bank's motion for summary judgment and remanded the state claim under the DTPA to the state court for disposition. The appellants appealed to the United States Court of Appeals, Fifth Circuit, which affirmed the federal district court's decision on March 29, 1995. *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 75, 133 L.Ed.2d 35 (1995). The facts set out in the opinion of the United States Court of Appeals, Fifth Circuit, are repeated here, because the fact issues in this case are identical to the fact issues in that case:

> John T. Engstrom operated a rice farm in Texas. His farm was financed by the First National Bank of Eagle Lake. Engstrom owed approximately $412,600 to First National. Part of this debt was secured by the equipment used on the farm. In October 1989, John Engstrom was called to active military duty and was deployed to the Middle East. Prior to his departure, Engstrom made arrangements with First National for a neighbor, James Clipson, to carry out the orderly sale of Engstrom's equipment, as necessary, to meet payments due on the outstanding loans. Engstrom met with Travis Wegenhoft, First National's vice president, and obtained First National's consent to sell the equipment at private sales and to apply the sales proceeds to the loan balances. Some pieces of equipment were sold as a result of private sales, but on January 26, 1991, most of the equipment was sold at auction.

> The equipment was moved to the auction site by Clipson. Sam Thompson, a senior vice president with First National, contacted the auctioneer and arranged a location for the auction. Equipment belonging to Engstrom and other farmers in the area was auctioned. Both Mr. Thompson and Wegenhoft were present at the auction. Following the auction, Mr. Wegenhoft signed Mr. Engstrom's name to the checks for Engstrom's portion of the proceeds, and had the proceeds applied to Engstrom's outstanding debt.

*Id.* 47 F.3d at 1461–62.

The Soldiers' and Sailors' Civil Relief Act (Relief Act) prohibits the sale or foreclosure of a serviceman's mortgaged property in 50 App.U.S.C.A. § 532. The Fifth Circuit held: "the testimony is uncontradicted that Clipson

sold the equipment with, what First National and Clipson thought was, Engstrom's permission." The court found that the Bank was not liable under the Relief Act for selling the equipment for several reasons. The court found:

> First, as we have stated above, First National thought that Clipson had Engstrom's permission to sell the equipment. *See Pailet [v. Ald, Inc.],* 194 So.2d [420] at 423 [(La.Ct.App.1967)] (holding that duly authorized representatives may sell a serviceman's property). Second, Engstrom submitted no summary judgment evidence inferring that Clipson was an agent of the bank, which could impute Clipson's action to the bank, when the equipment was sold. Third, we have found no authority indicating that First National's acquiescence to Clipson's sale of the equipment or that First National's organization of the auction where the equipment was sold makes it liable under the Relief Act.

*Id.* at 1464.

Appellants argued to the federal court that Clipson did not have permission to sell the equipment and pointed out Engstrom's deposition and affidavit testimony in which he denied giving Clipson permission to sell the equipment. The Fifth Circuit stated:

> However, for summary judgment purposes, assuming arguendo that Clipson did not have the authority to sell the equipment at auction, such lack of authority would only give Engstrom a potential action against Clipson who is not a party to the lawsuit. As noted by the District Court, Engstrom's proof fails to establish liability of First National under the Relief Act.

*Id.* at 1464.

Appellee contends that all of appellants' causes of action are barred by collateral estoppel and/or the law of the case. In subpoints of error A, B, C, and, D, appellants argue that their state law claims are not barred by collateral estoppel or the law of the case.

Under Texas law, collateral estoppel, or issue preclusion, prevents a party from relitigating a fact issue in a subsequent lawsuit when the identical fact issue was fully and fairly litigated and was essential to the judgment in a prior litigation. *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 721–22 (Tex.1990); *Houston Lighting & Power Co. v. Dickinson Independent School District,* 794 S.W.2d 402, 406 (Tex.App.—Texarkana 1990, writ denied). Under federal law, collateral estoppel will bar the subsequent litigation of an issue when: (1) it is the identical issue involved in prior litigation, (2) the issue was actually litigated in the prior litigation, and (3) the determination of the issue was a critical and necessary part of the prior litigation. *Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1166 (5th Cir.1981). In this case, the same result will be reached whether federal or state law is applied to the issue of collateral estoppel. Therefore, we do not decide the choice of law question. *Eagle Properties,* 807 S.W.2d at 721. *See also Dorney v. Henderson Clay Products, Inc.,* 838 S.W.2d 314, 317 (Tex.App.—Texarkana 1992, writ denied).

The issue specifically addressed by the federal district court was the Bank's involvement in the sale of appellants' property at the auction sale. *Engstrom,* No. H–91–2392, slip. op. at 4. If the Bank had taken an active participation in the auction sale, the court could have found that the Bank violated the Relief Act by selling mortgaged property of a serviceman while he was on active duty. The federal district court found the Bank's summary judgment evidence demonstrated that it was Clipson and not the Bank that placed the equipment in auction. *Id.* at 4. The federal district court held "the damage sustained could not be imputed to the Bank but rather to Clipson who is not a party to this proceeding" and the "Bank did not violate the statute" [Relief Act]. *Id.* at 4–5. The Fifth Circuit affirmed the judgment of the federal district court and found the Bank was not liable under the Relief Act for selling the equipment of Engstrom "for several reasons," specifically: (1) the Bank thought that Clipson had Engstrom's permission to sell the equipment, (2) Engstrom submitted no summary judgment evidence inferring that Clipson was an agent of the Bank, which could impute Clipson's action to the Bank, when the equipment was sold, (3)

the court found no authority indicating that the Bank's acquiescence to Clipson's sale of the equipment or that the Bank's organization of the auction where the equipment was sold made the Bank liable under the Relief Act. *Id.*

We now turn to the question of whether any of the specific issues in this case were litigated in the prior federal action, thereby estopping appellants from asserting the claims in this action.

Appellants contend their state-law claims were not barred by the summary judgment on their federal claim because the federal district court did not rule on appellants' DTPA claim under the state law but remanded it back to the state court. Appellants argue that by finding only that the Bank did not violate the Relief Act, the federal court did not hold that the Bank, "by its own conduct, did not cause the Engstroms *any* damage." We disagree.

The federal district court remanded the state-law claim under DTPA to the state court pursuant to the holding in *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 351, 108 S.Ct. 614, 619–20, 98 L.Ed.2d 720 (1988), and held:

> In *Carnegie–Mellon,* the Supreme Court stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. at 350 n. 7 [108 S.Ct. at 619 n. 7]. Since there has been no substantial commitment of judicial resources and the remaining claims are routinely resolved [citations omitted], remand of plaintiffs' state law claims is proper.

*Engstrom,* No. H–91–2392, slip op. at 5.

In short, the federal district court did not rule on any part of the appellants' state-law DTPA claim and remanded the case to the state court for disposition of the remaining claim pursuant to federal procedure. The federal district court had jurisdiction over the state-law claim, but declined to exercise it because the single federal-law claim was eliminated at an early stage and the district court had "a powerful reason to choose not to continue to exercise jurisdiction." *Engstrom,* No. H–91–2392, slip op. at 5 (citing *Parker & Parsley Petroleum v. Dresser Industries,* 972 F.2d 580, 585 (5th Cir.1992).

■ To the extent that the federal court found that Clipson was solely responsible for the auction sale and there was no evidence that Clipson's conduct could be imputed to the Bank, the DTPA claims of appellants are barred by collateral estoppel. The sole violation asserted against the Bank under the Relief Act was that the Bank allegedly seized appellants' equipment and sold it at auction at an unreasonably low price. The sole violation asserted against the Bank under appellants' state law claims was that the Bank allegedly seized appellants' equipment and sold it at auction at an unreasonably low price. The conduct of the Bank did not cause damages under the Relief Act because the evidence demonstrated it was Clipson and not the Bank that placed the equipment in auction.

■ For DTPA violations, only producing cause must be shown. TEX. BUS & COM.CODE ANN. § 17.50(a) (Vernon 1987 & Supp.1996); *Prudential Ins. v. Jefferson Associates,* 896 S.W.2d 156, 161 (Tex.1995). This requires proof that an act or omission was a substantial factor in bringing about injury which would not otherwise have occurred. *Id.* Unless there is some evidence that the Bank's acts or omissions were a substantial factor in bringing about the injury which would not otherwise have occurred, and this evidence satisfies the requirement of actual causation in fact, appellants are not entitled to recover on any of their claims. *Id.* The federal district court found that appellants submitted no summary judgment evidence inferring that Clipson was an agent of the bank, which could impute Clipson's action to the bank, when the equipment was sold. *Engstrom,* 47 F.3d at 1464. The factual issue resolved in the federal district court case established that the Bank was not liable under the Relief Act for selling the equipment because "it was Clipson and not the Bank that placed the

equipment in auction." *Engstrom,* No. H–91–2392, slip op. at 4. In short, the finding of the federal court established no wrongdoing on the part of the Bank in the sale of appellants' property by Clipson at the auction. The "act or omission" of the bank in the sale of appellants' property is the ultimate issue upon which all of their causes of action are based. Appellants are estopped from bringing a claim under DTPA against the Bank for participating in the auction sale because the federal court determined that Clipson, not the Bank, was responsible for the sale of the property and there was no evidence Clipson was an agent of the bank, which would impute Clipson's actions to the Bank. The federal district court found the bank was thus not liable under the Relief Act by engaging in a wrongful sale of appellants' property. *Id.* The same "act or omission" by the Bank that was the basis of appellants' federal claim was made the basis of their DTPA claim. Since the federal court determined the bank was not responsible for the auction sale of appellants' property, appellants are collaterally estopped from asserting this claim against the Bank under the state DTPA. *See Eagle Properties,* 807 S.W.2d at 724. Appellants' sub-point of error E further asserts that appellants were "consumers" under DTPA. Having found that appellants' DTPA claim is barred by collateral estoppel, we find it unnecessary to address this issue. We overrule appellants' sub-points of error A, B, C, D, and E.

■ In sub-point of error F, appellants assert their claims for negligence, gross negligence, fraud, and violation of the Restatement (Second) of Torts, section 551, were valid. Appellants argue the Bank failed to disclose the auction sale to Engstrom and failed to prevent Clipson from selling the equipment at the auction sale which said failures caused appellants' damages.

As stated in this opinion, the federal court decided "Engstrom's proof fails to establish liability of First National under the Relief Act." *Engstrom,* 47 F.3d at 1464. If the Bank was not liable under the Relief Act, then there was no proof of its participation in any manner in the sale of appellants' property. The third reason given by the Fifth

Circuit for holding the Bank not liable for selling the equipment was, "we have found no authority indicating that First National's acquiescence to Clipson's sale of the equipment or that First National's organization of the auction where the equipment was sold makes it liable under the Relief Act." *Engstrom,* 47 F.3d at 1464. In short, the finding of the federal court is to the effect that the Bank engaged in no wrongdoing in connection with the sale of appellants' property. The Bank's alleged participation in this sale is the ultimate issue upon which appellants' base all of their causes of action. The finding by the federal court negates an essential element of appellants' claims for fraud and negligence which require that the acts or omissions complained of be a proximate cause of appellants' damages. If *any* of the issues in appellants' case were litigated in the federal case, appellants are estopped from asserting their claims in this action. *Eagle Properties,* 807 S.W.2d at 722–724. In *Eagle Properties,* the court found that the issue of fraudulent inducement had been decided adversely to appellants in the prior federal case and appellants were collaterally estopped from claiming common law and statutory fraud. *Id.* at 723. Likewise, the *Eagle Properties* court found that the issue of negligent management had been resolved in the prior case and summary judgment was proper on the basis of collateral estoppel. *Id.* at 724. "The element common to both proximate cause and producing cause is actual causation in fact." *General Motors Corp. v. Saenz,* 873 S.W.2d 353, 357 (Tex.1993). "This requires proof that an act or omission was a substantial factor in bringing about injury which would not otherwise have occurred." *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980). We find that the issue of causation of appellants' injury was actually litigated and was essential to the judgment in the federal district court case and the finding by the federal court that the Bank did not cause appellants' injury collaterally estops appellants' actions for fraud and negligence.

■ Appellants further argue that the Bank had a duty of disclosure under section 551, Restatement (Second) of Torts. This

section provides a general duty to disclose facts in a commercial setting and has never been adopted as a rule of law in Texas. *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 352 (Tex.1995). We overrule appellants' sub-point of error F.

■ In sub-point of error G, appellants contend the trial court erred in granting summary judgment on their conspiracy claim. After appellee filed its second amended motion for summary judgment, appellants filed their third amended original petition adding conspiracy as an additional cause of action. Appellee then filed a supplemental motion for summary judgment addressing the conspiracy action and the other causes of action.

Appellants argue that appellee's supplemental motion for summary judgment was filed less than twenty-one days before the trial court ruled on that motion and should not have been ruled on by the trial court. We disagree.

Rule 166a, Texas Rules of Civil Procedure, provides that a party may file its motion for summary judgment with less than twenty-one days' notice if the trial court grants it leave to do so. The record shows that the trial court granted leave to appellee to file its supplementary motion with less than twenty-one days' notice. We find that the trial court did not err in granting leave to appellee to file its supplemental motion less than twenty-one days before the court ruled on the motion. *See City of Dallas v. Continental Airlines, Inc.,* 735 S.W.2d 496, 500 (Tex.App.—Dallas 1987, writ denied).

■ The elements of civil conspiracy, all of which must be proved, are: (1) two or more persons; (2) with an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). Liability is sufficiently established by proof of a concert of action or other facts and circumstances from which "the natural inference arises that the unlawful, overt acts were committed in furtherance of common design, intention, or purpose of the alleged conspira-

tors." *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 581 (Tex.1963). However, a vital fact may not be proved by unreasonable inferences from other facts and circumstances. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 858 (Tex.1968). Further, a vital fact may not be established by piling inference upon inference. *Id.* There must be shown the existence of a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Id.* at 856. Conspiracy requires wrongful conduct that would be actionable against each coconspirator individually. *Gulf Atlantic Life Insurance Co. v. Hurlbut,* 696 S.W.2d 83, 102 (Tex.App.—Dallas 1985), *rev'd on other grounds,* 749 S.W.2d 762 (Tex.1987); *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 487 (Tex.App.—Corpus Christi 1989, writ denied). In this case, the Fifth Circuit found that the Bank was not liable for the sale of the equipment and Engstrom submitted no summary judgment evidence inferring that Clipson was an agent of the bank, which could impute Clipson's action to the bank, when the equipment was sold. *Engstrom,* 47 F.3d at 1464. The Fifth Circuit found that the bank did not violate the Relief Act by selling the equipment. *Id.* Since the Fifth Circuit held the Bank was not liable under the Relief Act for selling appellants' equipment at the auction sale, appellants are precluded from asserting that the Bank conspired with Clipson to defraud or injure appellants by wrongfully selling his equipment at the auction sale. *See Gonzalez v. San Jacinto Methodist Hosp.,* 905 S.W.2d 416, 423 (Tex.App.—El Paso 1995) *rev'd on other grounds,* 922 S.W.2d 928 (Tex.1996) (because an alleged co-conspirator was innocent of all wrongdoing by the law of the case in a prior decision, the conspiracy allegation against the other alleged co-conspirator was precluded).

■ To prevail on its motion for summary judgment, appellee must "establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action." *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *Goldberg v. U.S. Shoe*

*Corp.*, 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Once the appellee had produced competent evidence to negate a necessary element of the appellants' cause of action, the burden shifted to appellants to introduce evidence that raised a fact issue with respect to the element negated by the appellants' summary judgment evidence. *Goldberg*, 775 S.W.2d at 752. Appellants produced no evidence of a conspiracy between the Bank and Clipson in their response to appellee's motion for summary judgment. The response of appellants to appellee's motion for summary judgment contended the affidavits of Clipson and Wegenhoft were not competent summary judgment evidence because they were interested parties, citing *Bankers Commercial Life Ins. Co. v. Scott*, 631 S.W.2d 228, 231 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). We find it unnecessary to consider this evidentiary point because appellee successfully negated one essential element of appellants' alleged conspiracy claim by collateral estoppel. Furthermore, appellants produced no summary judgment evidence to raise a material issue of fact showing a conspiracy between Clipson and the Bank. We find that appellee successfully negated at least one element of appellants' cause of action for conspiracy and summary judgment was properly granted. *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983). We overrule appellants' sub-point of error G.

The judgment of the trial court is affirmed.

EDELMAN, Justice, Dissenting.

I disagree with the majority opinion that the Engstroms' claim for negligence is collaterally estopped by the decisions in *Engstrom v. First Nat'l Bank*, No. H–91–2392 (S.D.Tex. Aug. 31, 1993), *aff'd*, 47 F.3d 1459 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 75, 133 L.Ed.2d 35 (1995). The Fifth Circuit opinion in that case states:

In his deposition, John Engstrom testified that before he left he arranged with Clipson and Wegenhoft to sell some of his equipment *at private sale* to pay some of the debt. He also testified that *he told Clipson and Wegenhoft that his property was not to be sold at auction.*

In his deposition, Wegenhoft testified ... that it was *his understanding* that Engstrom had given his permission to Clipson to sell the equipment at auction.

Although Engstrom produced evidence that First National acquiesced in the sale of the equipment, ... First National is not liable *under the Relief Act* for selling the equipment for several reasons. First, ... First National *thought* that Clipson had Engstrom's permission to sell the equipment.... Second, Engstrom submitted no summary judgment evidence inferring that Clipson was an agent of the bank, which could impute Clipson's action to the bank, when the equipment was sold. Third, we have found no authority indicating that First National's acquiescence to Clipson's sale of the equipment ... makes it liable *under the Relief Act.*

[A]ssuming arguendo that Clipson did not [actually] have the authority to sell the equipment at auction, such lack of authority would only give Engstrom a potential action against Clipson.... Engstrom's proof fails to establish liability of First National *under the Relief Act.*

*Id.* at 1463–64 (emphasis added). The foregoing demonstrates clearly that the Fifth Circuit's decision (a) was confined to the claim against the bank under the Relief Act, and (b) did not purport to decide whether Clipson actually had authority to sell the equipment at auction. It simply acknowledged that the Bank's evidence that Wegenhoft *thought, i.e.,* correctly or incorrectly, that Clipson had such authority was a factor showing that the Bank was not liable under the Relief Act.

I have seen nothing to indicate that any of the courts was presented the issues whether, in light of John Engstrom's alleged instruction to the Bank that his property *not* be sold at auction, the Bank (1) owed him any duty of reasonable care not to release his property for auction without his express consent, (2) actually exercised reasonable care in releasing the property, or (3) proximately caused the Engstroms damage if it failed to exercise such care. In concluding that the Fifth Circuit opinion negates the causation element of

the Engstroms' negligence claim, the majority opinion states:

> If the Bank was not liable under the Relief Act, then there was no proof of its participation in any manner in the sale of appellant's property.... In short, the finding of the federal court is to the effect that the Bank engaged in no wrong-doing in connection with the sale of appellant's property.

Maj. op. at 444. In addition to disagreeing that either of these conclusions can be drawn from the federal court opinions, I do not see how those opinions can otherwise be read to address any issue affecting the Engstroms' negligence claim. Because the federal opinions do not, therefore, collaterally estop that claim, I would reverse the judgment of the trial court in part and remand the case for further proceedings on that issue.