Alfonso **GONZALEZ, M.D.,** Appellant,

v.

**SAN JACINTO METHODIST HOSPITAL and Octavio Calvillo, M.D.,** Appellees.

No. 08–93–00395–CV.

Court of Appeals of Texas, El Paso.

Aug. 17, 1995.

Rehearing Overruled Sept. 27, 1995.

**418**

H. Clay Moore, Houston, for appellant.

Roy L. Fuller, Baytown, for appellees.

Before LARSEN, McCLURE and CHEW, JJ.

### OPINION

LARSEN, Justice.

This appeal from summary judgment involves a dispute between two anesthesiologists, Alfonso Gonzalez, M.D. and Octavio Calvillo, M.D., as well as the hospital where both had staff privileges, San Jacinto Methodist Hospital. The Texarkana Court of Appeals, in an earlier opinion concerning that portion of this dispute involving Dr. Gonzalez and San Jacinto Methodist Hospital, affirmed summary judgment for the hospital. *Gonzalez v. San Jacinto Methodist Hospital,* 880 S.W.2d 436 (Tex.App.—Texarkana 1994, writ denied). We affirm in part and reverse and remand in part.

### FACTS

Plaintiff Alfonso Gonzalez is an anesthesiologist with staff privileges at San Jacinto Methodist Hospital; he has practiced at the hospital for twenty-three years. Defendant Octavio Calvillo is also an anesthesiologist with staff privileges at the hospital.

In 1988, the hospital's head of anesthesiology announced her intent to retire; the hospital at that time decided to contract with an anesthesiology group to provide exclusive services for the hospital. The hospital first approached Dr. Gonzalez with the suggestion, but he declined to apply for the position as chief of anesthesiology, as he did not want the administrative responsibilities involved. The hospital then recruited Dr. Calvillo to serve as chief of anesthesiology; its initial approach to Dr. Calvillo was in fact made by Dr. Gonzalez. On February 15, 1989, the hospital and Calvillo entered into a contract for anesthesiology services for two years, with automatic renewal each year thereafter unless either party terminated. The contract provided that Calvillo had sole authority to schedule and provide anesthesia services to the hospital.

During this two year period, Calvillo and Gonzalez embarked upon a short-lived partnership which dissolved when the two doctors discovered it involved adverse tax consequences. After the breakup, the relationship between the two doctors soured. Gonzalez alleges that Calvillo began steering anesthesia patients away from him, and that he gave Gonzalez a disproportionate share of Medicare/Medicaid patients (whose care would be reimbursed at a lower rate). Gonzalez also made certain allegations against Calvillo regarding the quality of care Calvillo was providing for patients.

Calvillo responded by asking for Gonzalez's resignation from the anesthesiology department, warning him that should Calvillo be successful in retaining his position as chief of anesthesiology, he would no longer schedule Gonzalez for anesthesiology cases at the hospital. Gonzalez refused to resign, and obtained support from a majority of referring doctors with staff privileges at the hospital, who asked that Gonzalez be assigned a percentage of their anesthesia work. The two anesthesiologists were able to resolve their differences temporarily, and both performed services for the hospital until the initial anesthesiology contract ended on February 15, 1991.

The hospital put its anesthesiology contract out for bid; both Calvillo and Gonzalez made bids to provide the hospital with exclusive anesthesiology services. The hospital accepted Calvillo's bid; Calvillo, true to his word, would not share anesthesiology assignments with Gonzalez under the new contract. Thus, although Gonzalez retained staff privileges at the hospital, he was effectively prevented from practicing anesthesiology there because the contract between the hospital and Calvillo was exclusive. Gonzalez sued Calvillo and the hospital under various contract and tort theories, all disposed of by the trial court on summary judgment.

### STANDARD OF REVIEW

■ The standard of review in a summary judgment on appeal is:

The movant for summary judgment has the burden of showing: (1) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment,

evidence favorable to the nonmovants will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovants and any doubts resolved in their favor. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985).

Where the defendant is the movant, we link our review to whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 658 (Tex.App.—Dallas 1992, no writ). Because it is the plaintiff's burden to establish each element of the cause of action, if the defendant submitted summary judgment evidence disapproving at least one element of the plaintiff's case, then the defendant's summary judgment was properly granted. *Bradley v. Quality Serv. Tank Lines,* 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corp.,* 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ). In short, summary judgment entered in favor of a defendant is proper only if the plaintiff could not succeed on any theory pleaded, as a matter of law. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983); *Gibbs,* 450 S.W.2d at 828.

### LAW OF THE CASE

Plaintiff Gonzalez originally filed this lawsuit against San Jacinto Methodist Hospital and Octavio Calvillo, M.D. The hospital obtained a summary judgment and a severance, thus making the judgment in its favor final. Dr. Gonzalez appealed that judgment to the Texarkana Court of Appeals which affirmed. Dr. Gonzalez's application for writ of error to the Texas Supreme Court was denied.

Dr. Calvillo also obtained summary judgment from the trial court. Plaintiff Gonzalez appeals that ruling to this Court after a final ruling from the court of last resort in the companion case. We are therefore obligated to treat certain holdings on matters of law in the companion case as conclusively established.

The "law of the case" doctrine mandates that when a question of law is decided on appeal by a court of last resort, that decision governs the case throughout its subsequent stages. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986); *Hallmark v. Hand,* 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied). Matters of law disposed of on a former appeal will not be revisited in a later appellate proceeding. *Id.* at 474. The doctrine applies only to questions of law and does not govern decisions on questions of fact. *Hudson,* 711 S.W.2d at 630. The doctrine does not necessarily apply if the issues or facts presented in successive appeals are not substantially the same as those involved in the first decision. *Id.* Neither does it apply where the prior appellate ruling is clearly erroneous. *Texas Employers Insurance Assoc. v. Tobias,* 740 S.W.2d 1, 2 (Tex.App.—San Antonio 1986, writ denied). Although appellate courts have discretion to depart from the doctrine in exceptional or urgent situations, we must be mindful of the public policy underlying law of the case; to prevent useless relitigation of issues already decided, to insure consistency, and promote judicial economy. *See LeBlanc v. State,* 826 S.W.2d 640, 644 (Tex.App.—Houston [14th Dist.] 1992, writ ref'd).

Several questions of law presented in Dr. Gonzalez's appeal from San Jacinto Methodist Hospital's summary judgment are also present in the appeal before us here. We will, when appropriate, apply the conclusions reached by the Texarkana Court of Appeals on those issues.

### TORTIOUS INTERFERENCE WITH CONTRACT

In his first point of error, Dr. Gonzalez urges that the trial court erred in finding that the bylaws of San Jacinto Methodist Hospital did not constitute a contract between himself and the hospital; in his second point of error, Gonzalez claims that the trial court further erred by finding that Dr. Calvillo had established, as a matter of law, that Calvillo had not tortiously interfered with contracts between Gonzalez and the hospital, as well as contracts with referring physi-

cians. As these points are interdependent, we will address them together.

■ The elements of tortious interference with contract are: (1) existence of a contract subject to interference; (2) an act of interference that is wilful, intentional, and calculated to cause damage; and (3) actual damages or loss proximately resulting. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Armendariz v. Mora*, 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.). To prevail on summary judgment, therefore, Dr. Calvillo must conclusively disprove at least one of these elements as to Gonzalez's tortious interference claims regarding the hospital, and the referring physicians.

■ As to the hospital, the Texarkana Court of Appeals found that under this set of facts, the bylaws were indeed a contract between the hospital and Dr. Gonzalez. *Gonzalez*, 880 S.W.2d at 439. That Court also held, however, that neither the bylaws nor staff privileges conveyed to Gonzalez any affirmative right to obtain work within the hospital, nor did they limit the hospital's right to enter into exclusive contracts for conducting hospital business. *Id.* We find that the Texarkana Court's conclusions in this regard are binding upon us, and that therefore no damage could result from Calvillo's interference with the contract created by the hospital bylaws. Dr. Gonzalez retained full staff privileges throughout this controversy; indeed, he practiced in the hospital's eye clinic during this time. Any interference intended by Calvillo, therefore, had no effect upon the obligations the hospital owed Gonzalez. Thus, Calvillo has conclusively disproved the third element of Gonzalez's tortious interference claim. As to the contractual relationship between Gonzalez

and San Jacinto Methodist Hospital, the summary judgment is affirmed.

■ We next turn to Gonzalez's claim that Calvillo tortiously interfered with his business relations with other doctors.[1] To establish this cause of action, a plaintiff must show: (1) the reasonable probability that a contractual relationship would have been entered; (2) an intentional, malicious intervention with the formation of that relationship; (3) without privilege or justification; (4) resulting in actual damage or loss. *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 565 (Tex.App.—Dallas 1989, no writ). There is evidence here that contractual relations would have been formed had not Calvillo excluded Gonzalez from practicing anesthesiology at the hospital. Numerous doctors sent letters, included in this record, all stating that:

> This letter is to express my desire that any contract for the providing of anesthesia services to the Hospital after [February 15, 1991] include the services of Dr. Alfonso Gonzalez, M.D., whom I have worked with for a number of years and consider to be an asset to the Hospital and to my practice.

Each letter also contained a specific request that a percentage or an "equitable" share of that doctor's anesthesia patients be assigned to Dr. Gonzalez. We think that a fact question as to likely contractual relations between Gonzalez and other physicians is well established.

We likewise believe this record establishes a fact question as to Dr. Calvillo's intentional, malicious interference with the formation of such relationships. Calvillo sent Gonzalez a letter stating his intention of cutting Gonzalez out of any further anesthesia work at the hospital, stating as his justification:

---

1. Notably absent from this appeal is any claim of interference with the relationship between Dr. Gonzalez and *his patients*. That claim was a part of plaintiff's petition, but has apparently been abandoned here. Although certain types of physicians performing hospital-provided specialties, including anesthesiologists, radiologists, pathologists, and emergency care physicians, are not normally selected by the patient, it is certainly feasible that non-emergency surgical patients

would want to select their own anesthesiologist. Certainly where the anesthesiologist has staff privileges, we see no reason why the patient should be precluded from that selection because of a contract to which the patient is a stranger. This is not an argument raised by the parties, however, and we will therefore content ourselves only with remarking upon the inattention to patients' rights exhibited by all parties here.

This decision is not based on your medical qualifications or performance but is a business decision based on the best interests of the Anesthesia Department of the Hospital, and patient community.... Our working relationship has deteriorated as you know, and effective working relationship necessitates a relationship amoung [sic] hospital physicians and staff free of acrimony. This is clearly not the situation nor have we been able to resolve it over the past months.

We note that the "anesthesiology department" consisted of the two feuding doctors. Whether personal acrimony justifies complete exclusion from the available anesthesiology cases, particularly where referring physicians had specifically asked for Dr. Gonzalez to be assigned to their surgeries, is a fact question to be resolved by a jury. Point of Error Two is sustained as to plaintiff's claims of interference with business relationships with other staff physicians.

### CONSPIRACY AND RESTRAINT OF TRADE

In his Point of Error Three, Dr. Gonzalez urges that the trial court wrongly entered summary judgment on his claim of civil conspiracy against Dr. Calvillo. In his Point of Error Four, Dr. Gonzalez argues that the trial court erred in entering judgment on his claim that the exclusive contract between Calvillo and the hospital for anesthesiology services was an illegal restraint of trade. The conspiracy and restraint of trade claims are closely intertwined, as what Gonzalez actually alleges is that the hospital and Calvillo conspired to thwart the antitrust laws by creating an arrangement tying surgery performed in the hospital to Calvillo's services as anesthesiologist. We will therefore consider these two points together.

In *Gonzalez v. San Jacinto Methodist Hospital*, the Texarkana Court of Appeals considered these same claims, framing them thusly:

Although Gonzalez attempts to attack this problem from a slightly different angle, [than a straight antitrust claim] i.e. that of conspiracy rather than tying, this is more a question of semantics than of substance. His argument is necessarily that a conspiracy caused a violation of the antitrust laws through the connection of the two services....

The question in this case is, then, whether in the absence of a per se violation, Gonzalez has successfully raised an issue of material fact about whether the contract between Calvillo and the Hospital has unreasonably restrained competition. *Gonzalez*, 880 S.W.2d at 442.

The Texarkana Court concluded that the antitrust conspiracy question was controlled by a U.S. Supreme Court case, *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). There, an anesthesiologist was denied staff privileges at defendant hospital because the hospital had an exclusive services contract with an anesthesiology group, similar to the contract at issue here. The doctor sued, claiming the exclusive services contract was a "tying arrangement" prohibited by the antitrust laws. In denying the doctor's claim, the Supreme Court held that the validity of a tying agreement must focus on the market in which the products are sold; only if patients are forced to purchase the anesthesiologist's services because of the hospital's large market share would there be anticompetitive consequences. *Jefferson Parish*, 466 U.S. at 18, 19, 30, 104 S.Ct. at 1561, 1562, 1568, 80 L.Ed.2d at 16, 17, 24.

There was no evidence before the Texarkana Court, nor is there any before this Court, establishing San Jacinto's market share. The Texarkana Court therefore concluded that there was no fact question as to the application of antitrust laws against the hospital. *Gonzalez*, 880 S.W.2d at 443. That Court held, as a matter of law, that the hospital did not conspire to violation of those laws, and the Texas Supreme Court denied writ. We will therefore defer to the Texarkana Court's conclusions on conspiracy as law of the case.[2] *See Baptist Memorial Hospital System v. Smith*, 822 S.W.2d 67, 73

2. We are not completely in agreement with the analysis applied by that Court as to the evidence of market share, believing that the Texarkana

Court placed a burden upon nonmovant Gonzalez to produce evidence in response to summary judgment, which the law does not require. Nev-

(Tex.App.—San Antonio 1991, writ denied) (where Supreme Court refused writ n.r.e., that was decision on merits by court of last resort, and therefore law of the case).

 A conspiracy requires "two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). The elements of civil conspiracy are: (1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt, unlawful acts; and (5) proximately resulting injury. *Id.; First Interstate Bank of Texas, N.A. v. S.B.F.I., Inc.*, 830 S.W.2d 239, 249 (Tex. App.—Dallas 1992, no writ). Conspiracy requires wrongful conduct that would be actionable against each co-conspirator individually. *Gulf Atlantic Life Insurance Co. v. Hurlbut*, 696 S.W.2d 83, 102 (Tex.App.—Dallas 1985), *rev'd on other grounds*, 749 S.W.2d 762 (Tex.1987); *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 487 (Tex.App.—Corpus Christi 1989, writ denied). Here, the underlying wrongdoing alleged is anticompetitive activity; the hospital, however, has been conclusively found innocent of such activity. Thus, Dr. Gonzalez is likewise precluded from asserting that Dr. Calvillo conspired to violate the antitrust laws. *Kale v. Palmer*, 791 S.W.2d 628, 629 (Tex.App.—Beaumont 1990, writ denied). We conclude that the Texarkana's prior decision precludes any recovery on Dr. Gonzalez's antitrust and conspiracy claims against Dr. Calvillo. Points of Error Three and Four are overruled.

### CONCLUSION

We reverse the summary judgment as to Dr. Gonzalez's claims against Dr. Calvillo for tortious interference with business relationships as to referring physicians. This issue is remanded to the trial court for trial on the merits. In all other respects, the trial court's judgment is affirmed.

ertheless, we do not think this rises to the level of "clearly erroneous," and we decline to revisit the

