11th
Court of Appeals

                                                                  Eastland,
Texas

                                                             Memorandum
Opinion

 

Robert Powell, M.D.

Appellant

Vs.                   No.  11-03-00171-CV -- Appeal from Brown County

Brownwood
Regional Hospital, Inc. d/b/a 

Brownwood Regional Medical Center

Appellee

 

Robert Powell, M.D. filed suit against Brownwood
Regional Hospital, Inc. d/b/a Brownwood Regional Medical Center (Hospital)
alleging breach of contract and tortious interference with pro-spective
relationships.  The trial court entered
an order granting the Hospital=s
motion for summary judgment and dismissed all of Dr. Powell=s claims against the hospital.  Dr. Powell appeals only from the trial court=s order granting the Hospital=s motion for summary judgment on his
claim for breach of contract.  We affirm.

In 1996, Dr. Powell, a surgeon, began his practice
in Brownwood and was granted Aprivileges@ at the Hospital.  In February 1999, the Hospital=s chief of staff and the chairman of
the surgery committee met with appellant concerning complaints from the nurses
about appellant=s
disruptive behavior.  In February 1999,
the Hospital=s surgery
committee also began discussing Dr. Powell=s
treatment of a 4-year-old hernia patient and reviewing the charts of other
patients who Dr. Powell treated in which there seemed to be areas of
concern.  On August 10, 1999, the surgery
committee met and considered the accusations against Dr. Powell.  Dr. Powell was present at the meeting and was
able to answer questions from the surgery committee.   At the conclusion of the meeting, the
surgery committee recommended that the matter be referred to the Medical
Executive Committee (MEC) for appropriate action.   








The MEC met on September 21, 1999, and Dr. Powell
was present at the meeting.   The MEC
considered the complaints against Dr. Powell including his treatment of certain
patients and other behavioral concerns. 
On September 30, 1999, the MEC notified Dr. Powell of its decision to
place him on probation.   By letter, the
MEC stated that Dr. Powell was placed on probation for two years and provided
the following terms of probation:

1.  The Surgery Committee will continue to
perform their routine review of charts as well as variance reports.  The Surgery Committee will report review and
variance information relating to your activity to the Medical Executive
Committee on a quarterly basis throughout the probation period.

 

2.  You are to attend, at your own expense, the Professional
Assessment Program.  A Constructive
Approach to a Disruptive Problem located at Abbott Northwest Hospital in
Minneapolis, MN by March 31, 2000.  A
copy of the assessment report must be submitted to the Medical Executive
Committee.  The hospital is willing to
pay one-half the cost of the course, $6950.00. 
All other  related expenses will
be your responsibility.  

 

3.  You must meet with an appropriate physician
mentor as appointed by the MEC monthly to provide support and guidance on
dealing with people and situations.  MEC
will require quarterly verification from your mentor that you are complying
with this stipulation.  

 

The MEC further stated that, if Dr. Powell did not meet the
conditions of probation, additional action could result in the restriction or
loss of his privileges at the Hospital. 
Dr. Powell requested a fair hearing on the decision to place him on
probation.  The chief of staff responded
that Dr. Powell was not entitled to a fair hearing because the probation was
not an Aadverse
action.@ 

On November 8, 1999, the Hospital=s chief of staff requested that the MEC
appoint an investigative committee to consider corrective action against Dr.
Powell.  The chief of staff asked that
the investigative committee consider the ongoing allegations against Dr. Powell
along with new allegations of his failing to advise the parents of the
4-year-old hernia patient of complications which occurred during the procedure
Dr. Powell performed.  The investigative
committee issued a report on December 13, 1999, in which it found that the
majority of the allegations against Dr. Powell were Asubstantiated@ and recommended that the MEC suspend
Dr. Powell=s
privileges indefinitely.  The MEC
notified Dr. Powell by letter on January 12, 2000, of its recommendation that
his medical staff membership and clinical privileges be suspended indefinitely.  The MEC informed Dr. Powell of his right to
request a fair hearing pursuant to the fair hearing plan of the Medical Staff
Bylaws.   








A fair hearing was held in which Dr. Powell was
able to present testimony and evidence. 
Each charge was discussed.  The
fair hearing committee found that several of the charges, including Aimproper charting@ and behaving in a disruptive manner,
were not supported by a preponderance of the evidence.   The fair hearing committee also specifically
found that the allegation that Dr. Powell refused to comply with the terms of
probation to be unsupported by the evidence. The fair hearing committee found
the allegations dealing with the manner in which Dr. Powell communicated
information to the parents of the 4-year-old hernia patient to be supported by
a preponderance of the evidence.  Finding
that the Amost
serious allegations@ brought
against Dr. Powell were substantiated, the fair hearing committee recommended
terminating Dr. Powell=s
privileges at the Hospital.  The Board of
Trustees at the Hospital notified Dr. Powell that his staff membership and
clinical privileges would be terminated effective July 1, 2000. 

Dr. Powell filed suit against the Hospital
alleging that the Hospital breached its contract with him by not providing a
fair hearing after placing him on probation as required by the Medical Staff
Bylaws.  The Hospital filed a motion for
summary judgment arguing that the Medical Staff Bylaws did not create a
contract between the Hospital and Dr. Powell; that, even if the Medical Staff
Bylaws did create a contract, the Hospital did not breach the contract; and,
that in the event of a breach of contract, Dr. Powell was not harmed by any
such breach. 








In his sole issue on appeal, Dr. Powell argues
that the trial court erred in granting the Hospital=s
motion for summary judgment.  When
reviewing a traditional motion for summary judgment, the following standards
apply:  (1) the movant for summary
judgment has the burden of showing that there is no genuine issue of material
fact and that it is entitled to judgment as a matter of law;  (2) in deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the non‑movant
will be taken as true;  and (3) every
reasonable inference must be indulged in favor of the non‑movant and any
doubts resolved in its favor.  
TEX.R.CIV.P. 166a;  Goswami v.
Metropolitan Savings and Loan Association, 751 S.W.2d 487, 491
(Tex.1988);   Nixon v. Mr. Property
Management Company, Inc., 690 S.W.2d 546, 548‑49 (Tex.1985);   City of Houston v. Clear Creek Basin
Authority, 589 S.W.2d 671, 676 (Tex.1979).  
In order for a defendant to be entitled to summary judgment, it must
either disprove an element of each cause of action or establish an affirmative
defense as a matter of law.  American
Tobacco Company, Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex.1997);  Science Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex.1997).   When a
trial court=s order
granting summary judgment does not specify the ground or grounds relied upon
for its ruling, summary judgment will be affirmed on appeal if any of the
summary judgment grounds advanced by the movant are meritorious.   Dow Chemical Company v. Francis, 46
S.W.3d 237, 242 (Tex.2001);  Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex.1989).[1]

Dr. Powell argues that the Medical Staff Bylaws
created a contract between himself and the Hospital and that the Hospital
breached that contract by not providing him with a fair hearing when he was
placed on probation.  Procedural rights
established in hospital bylaws can constitute contractual rights.  Stephan v. Baylor Medical Center at
Garland, 20 S.W.3d 880, 888 (Tex.App. - Dallas 2000, no pet=n); Gonzalez v. San Jacinto
Methodist Hospital, 880 S.W.2d 436, 438 (Tex.App. - Texarkana 1994, writ
den=d). 
However, rights created by medical staff bylaws are not necessarily
binding on the hospital.  Stephan v.
Baylor Medical Center at Garland, supra;  Gonzalez v. San Jacinto Methodist Hospital,
supra; Weary v. Baylor University Hospital, 360 S.W.2d 895 (Tex.Civ. App. -
Waco 1962, writ ref=d
n.r.e.).  Medical staff bylaws that do
not attempt to define or limit a hospital=s
power as it acts through its governing board do not create contractual
obligations for a hospital.   Stephan
v. Baylor Medical Center at Garland, supra.  This is true despite the fact that the board
may have approved and adopted the medical staff bylaws.  Stephan v. Baylor Medical Center at
Garland, supra.  








The Medical Staff Bylaws of the Hospital state
that they are established and approved by the Board.  However, the Medical Staff Bylaws provide
that Athe staff
must cooperate with and is subject to the ultimate authority of the Board of
Directors.@  Therefore, because the Medical Staff Bylaws
do not attempt to define or limit the Hospital=s
power to act through its Board, the Medical Staff Bylaws do not create
contractual obligations for the Hospital. 
Stephan v. Baylor Medical Center at Garland, supra; see Weary
v. Baylor University Hospital, supra. 
There is no evidence to support Dr. Powell=s
claim for breach of contract.        

Moreover, assuming without agreeing that the
Medical Staff Bylaws did create a contract which entitled Dr. Powell to a fair
hearing after being placed on probation, Dr. Powell cannot show any harm
resulting from a breach of that contract. 
The fair hearing committee found that the allegation that Dr. Powell
failed to comply with the terms of his probation was not supported by a
preponderance of the evidence. Dr. Powell=s
privileges were terminated after a fair hearing in accordance with the Medical
Staff Bylaws and the fair hearing plan. 
There is no evidence that Dr. Powell was harmed by the initial denial of
a hearing after being placed on probation. 
The trial court did not err in granting the Hospital=s motion for summary judgment on Dr.
Powell=s claim
for breach of contract.

The judgment of the trial court is affirmed.

 

W. G. ARNOT, III

CHIEF JUSTICE

 

September 9, 2004

Not designated for publication. 
See TEX.R.APP.P. 47.2(a).

Panel
consists of:  Arnot, C.J., and

Wright,
J., and McCall, J.











[1]In a letter to the trial attorneys, the trial court
states its reasons for granting the Hospital=s motion
for summary judgment.  However, the order
granting the Hospital=s summary judgment does not specify the grounds relied
upon for its ruling.  Because the trial
court=s order does not specify the grounds relied upon for
its ruling, we will affirm if the Hospital is entitled to summary judgment on
any ground asserted in its motion.  See Strather v. Dolgencorp of Texas, Inc., 96
S.W.3d 420, 423 (Tex.App. ‑ Texarkana 2002, no pet=n).